

CLERK'S OFFICE
A TRUE COPY
Feb 05, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.     26-MJ-10 |
| records and information about the location of the cellular telephone | ) |
| assigned call number 361-557-5116, ("Target Cell Phone"), whose | ) |
| service provider is T-Mobile, a wireless telephone service provider | ) |
| headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054 | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

     An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

    Please see Attachment A.

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    Please see Attachment B.

     **YOU ARE COMMANDED** to execute this warrant on or before    02/19/2026    *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Honorable William E. Duffin, U.S. Magistrate Judge  .
                                                       *(United States Magistrate Judge)*

     ❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    02/05/2026 at 10:08 a.m.          *William E. Duffin*
                                                     *Judge's signature*

City and state:    Milwaukee, WI           Honorable William E. Duffin, U.S. Magistrate Judge
                                                    *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned **361-557-5116** (referred to herein and in Attachment B as "the **Target Cell Phone"**), with listed subscriber(s) of AXIS WILLIAMS that is in the custody or control of T-Mobile, a wireless telephone service provider (referred to herein and in Attachment B as the "**Service Provider**"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2.      **Target Cell Phone**.

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the **Service Provider**, including any information that has been deleted but is still available to the **Service Provider** or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the **Service Provider** is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the period of August 1, 2025, to the Present date:

    i.   Names (including subscriber names, usernames, and screen names);

    ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.   Local and long-distance telephone connection records;

    iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions.

    v.   Length of service (including start date) and types of service utilized.

    vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii.   Means and source of payment for such service (including any credit card or

28

bank account number) and billing records.

    ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

    (A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    (B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

    i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii. Source and destination telephone numbers;

    iii. Date, time, and duration of communication; and

    iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the **Service Provider**, the **Service Provider** is required to disclose the Location Information to the government. In addition, the **Service Provider** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a

29

minimum of interference with the **Service Provider**'s services, including by initiating a signal to determine the location of the Target Cell Phone on the **Service Provider**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the **Service Provider** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Title 18, United States Code, Sections 2252A and 2251(a) during the period August 1, 2025, to present date.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

CLERK'S OFFICE
A TRUE COPY
Feb 05, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* ) ) | Case No.  26-MJ-10 |
| records and information about the location of the cellular telephone assigned call number 361-557-5116, ("Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054 ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252A & 2251(a) | possession and receipt of child pornography and production of child pornography |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Craig De Leon, Special Agent - HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: 02/05/2026

_____
*Judge's signature*

City and state:  Milwaukee, WI

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

<strong><u>AFFIDAVIT IN SUPPORT OF</u></strong><br><strong><u>AN APPLICATION FOR A SEARCH WARRANT</u></strong>

I, Craig De Leon, a Special Agent with Homeland Security Investigations (HSI) being first duly sworn, hereby depose and state as follows:

<strong><u>INTRODUCTION AND AGENT BACKGROUND</u></strong>

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **361-557-5116,** ("**Target Cell Phone**"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

3. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. §§ 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the **Target Cell Phone**.

4. I am a Special Agent with Homeland Security Investigations and have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

1

5.     As a Special Agent for HSI my primary duty is to investigate violent crimes against children, to include the possession, production, and distribution of child sexual abuse material (commonly known as "CSAM"). I am familiar with the methods by which electronic devices are used as the means for receiving, transmitting, possessing, and distributing images and videos depicting minors engaged in sexually explicit conduct (hereafter referred to as "child pornography"). While employed by HSI, I have investigated federal criminal violations related to child sexual exploitation and child pornography as well as computer intrusions.

6.     As a result of training, experience, and discussions with other law enforcement officers assigned to investigate child pornography and child exploitation, I am familiar with methods by which electronic devices are used as the means for receiving, transmitting, possessing, and distributing images and videos depicting minors engaged in sexually explicit conduct.  I have also received more general training and gained experience in interviewing techniques, search warrant applications, the execution of searches and seizures, and the seizure, processing, and identification of electronic devices. Many of these investigations were aided by procurement of records related to electronic communications and subsequent analysis of those records. In most of those cases, the records provided critical investigative leads and corroborative evidence.

7.     The facts in this affidavit come from my training and experience, my review of documents, and information obtained from other agents, which I have found to be truthful and reliable. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter.

8.     Your affiant submits that there is probable cause to believe that the location information sought in this search warrant application and described in Attachment B will assist investigators in determining where the subject of the investigation, Axis WILLIAMS (DOB 10/25/2004), resides, and also where WILLIAMS' electronic devices are located. Your affiant

2

further submits that there is probable cause that Axis WILLIAMS has committed violations of possession and receipt of child pornography and production of child pornography in violation of Title 18, United States Code, Sections 2252A and 2251(a) and that the information sought in this warrant constitutes evidence of these criminal violations.

## **PROBABLE CAUSE**

a)      **The Target Cell Phone**

9.      On September 11, 2025, the St. Francis Police Department (SFPD) received a complaint regarding a sensitive crime involving a known 11-year-old female, LE (X/X/2014). SFPD Officer Anthony Garcia took the initial complaint and spoke with the 11-year-old's mother, TS. TS stated that she had looked through LE's cell phone. During TS's review of LE's cell phone, she located concerning chats on Snapchat.

10.     TS specifically located messages between LE's Snapchat account (Calvin143) and another account identified as **logan20254345**. TS then described the messages she observed to Ofc. Garcia as follows: Logan20254345 told LE that he was horny. Logan20254345 then began asking LE to send him pictures and videos of her showing and soaping up her breasts. TS was unable to document / photograph these messages as they disappeared after she viewed said messages. These messages, as described by TS, clearly show that Logan20254345 was soliciting nude depictions from LE. TS viewed these messages on 09/11/2025.

a)      From a subsequent search warrant served to Snapchat for this investigation, it was determined that these messages were exchanged between LE and logan20254345 between 09/07/25 at 23:39 UTC and 09/11/2025 at 17:38 UTC.

11.     TS also located messages between LE and a different Snapchat account identified as **brad231022**. TS was able to obtain a brief video showing some of the back-and-forth messages. The following is a summary of these messages and a screen shot of the video provided by TS:

3

a) Message Summary

- LE: You 34

- LE: Bey

- Brad: Hey

- Brad: I guess it is

- Brad: Is it?

- LE: That you 34

- LE: Why would it

- Brad: Idk bc u brought it up

- Brad: Delete those messages tho pls

- LE: What ones

- Brad: The 34

- LE: Why

- LE: Am I a problem

- Brad: Nope

- Brad: I don't want anyone to see

b) Video Screenshot

4



From a subsequent search warrant served to Snapchat for this investigation, it was determined that these messages were exchanged between LE and Brad231022 between 09/10/25 at 00:29 UTC and 09/11/2025 at 17:17 UTC.

     12.     TS also looked through LE's phone photo album and found numerous pictures of LE naked and also found a video of LE nude in the shower with soap on her breasts. Based upon these findings, TS is concerned that LE has sent nude photos / videos of herself to either brad231022 and/or logan20254345, or other unknown adult men online. TS's concerns were heightened after she located the nude shower video since that is the exact video that logan20254345 had requested.

     13.     TS was in possession of LE's phone when she reported this incident to Ofc. Garcia. TS willingly provided LE's phone to Ofc. Garcia and further provided the passcode of "1234." TS provided consent for the St. Francis Police Department to search LE's phone.

     14.     On September 12th, 2025, Detective Zachary Gilden (SFPD) took over the investigation of this case. Detective Gilden, based on his training and experience, found the

messages between LE and the two other Snapchat accounts (Brad231022 and Logan20254345) to be concerning for potential ongoing child exploitation.

15. On September 12th, 2025, Det. Gilden obtained a state search warrant for the Snapchat accounts of Calvin143, Brad231022, and Logan20254345. This search warrant was signed by Milwaukee County Circuit Court Judge Rebeca Kiefer.

16. On September 22nd, 2025, Det. Gilden received the requested information from Snapchat. He was able to confirm that LE was the owner of the **Calvin143** account because the phone number listed on the account matched LE's phone number and the email address listed was consistent with LE's first and last name. It should be noted that it was also discovered that LE's snapchat account had a previous display name that is consistent with LE's first name.

17. Det. Gilden reviewed the message data from the Brad231022 and Logan20254345 accounts. He located a message from Logan20254345 which read "Hey I am so horny" which was sent on 09/11/2025 at 17:18 UTC. This would be consistent with the messages described by TS as referenced in paragraph 10. Det. Gilden also located messages from Brad231022 which matched the messages referenced in paragraph 11. These messages were sent by Brad231022 between 09/10/2025 at 00:29 UTC and 09/11/2025 at 17:17 UTC.

18. During his review of the documentation provided by Snapchat, he was able to determine that LE had transmitted nude imagery of herself to 14 different Snapchat accounts.

19. Of the 14 Snapchat accounts that were identified to have received nude imagery from LE, one was specifically identified as **Singoku2025.** Det. Gilden was able to identify approximately 80 nude images / videos of LE which were transmitted by LE to this account. Det. Gilden specifically located multiple videos which were sent by LE on Snapchat to this account which included two other juvenile, pre-pubescent males, who were later identified as LE's younger cousins. In these videos LE and the two juvenile males engaged in sexual acts with each other.

6

20. A description of three of the videos is as follows:

a) **File-Name:** **snap~media_v4~2025-09-07-01-55-46UTC~loreleiericso25~singoku2025~saved~b~EiASFXNqMGFKQ1JjUE13R0swdDYyNXZwODIBT0gCUARgAQ~v4**

- Description: This video is 10 seconds in length and shows LE seated with her pants pulled down exposing her vagina. LE's face is fully visible in portions of this video. A juvenile male can be seen standing in front of LE and he asks what he is supposed to do with the pen that he is holding. LE then points to her vagina and says "right here". The video ends as the juvenile male begins pushing the pen towards LE's vagina.

- This video was sent by LE on 09/07/2025 at 01:55:46 UTC

b) **File-Name:** **snap~media_v4~2025-09-07-01-55-47UTC~loreleiericso25~singoku2025~saved~b~EiASFVA4WG9NdkMyYm81bjhXT0tlSHhTNjIBT0gCUARgAQ~v4**

- Description: This video is 9 seconds in length and shows LE seated with her pants pulled down exposing her vagina. A juvenile male can be seen inserting what appears to be a pen into LE's vagina. This video appears to be a continuation of the situation described in the video above (a).

- This video was sent by LE on 09/07/2025 at 01:55:47 UTC

c) **File-Name:** **snap~media_v4~2025-09-07-01-19-49UTC~loreleiericso25~singoku2025~saved~b~EiASFW1yZTR3NVIxNXhZY2c3a2t3cElxbjIBT0gCUARgAQ~v4**

7

- Description: This video is 3 seconds in length and shows both the front facing and rear facing (selfie) camera views. LE can be seen in the rear facing view and she proceeds to lift her shirt up. It appears she exposes her breast to two juvenile males who are pictured in the front facing camera. Both of the juvenile males can be seen standing next to each other in the front facing camera view. They are both looking towards the camera and LE.

- This video was sent by LE on 09/07/2025 at 01:19:49 UTC

d) **File-Name:** **snap~media_v4~2025-09-07-17-34-10UTC~loreleiericso25~singoku2025~saved~b~EiASFVJkNG5zNnRt SUhtcGZWdjBpTzkzRjIBT0gCUARgAQ~v4**

- Description: This image shows LE's fully exposed vagina

- This image was sent by LE on 09/07/2025 at 17:34:10 UTC

21.     Det. Gilden reviewed the messaging content between loreleiericso25 (LE) and singoku2025. Det. Gilden located the following messages during his review:

a) Date: 09/03/2025 (Between 02:11:44 and 02:12:28 UTC)

- LE: Hi

- Singoku2025: Hi?

- Singoku2025: Age please

- LE: 11

- Singoku2025: oh

- Singoku2025: 16

b) Date: 09/07/2025 (Between 01:10 and 02:31 UTC)

- Singoku2025: What r u gonna have ur cousin do?

8

- LE: Idk what you thin I should make them dance

- ......

- Singoku2025: Oooooo, have him show u his D

- LE: Okay

- Singoku2025: And show me too lol

- LE: Ok

- ......

- LE: He's hard

- .....

- Singoku2025: Oooo u should tease him by showing him ur boobs, and i wanna see that he saw them

- LE: Ok

- ....

- Singoku2025: Ooooo, let them touch ur boobs, and show me them touching ur boobs

- .....

- Singoku2025: Ooooo u should have them let u touch their D

- Singoku2025: And I wanna see u touching their D

- LE: I already have

- Singoku2025: Can u do it again please so i can see

- Singoku2025: Unless u wanna go farther than that

- .....

- Singoku2025: Oooo, u should suck them and show me that u r

9

sucking them

- LE: No only you

- ....

- Singoku2025: U should have them touch and play with ur V and let me see

   **c)** Date: 09/07/2025 (Between 17:21:55 and 17:33:42 UTC)

- Singoku2025: babygirl please, can I see video of ur body

- Singoku2025: full body naked please

- Singoku2025: videos please mamas

- Singoku2025: yesssss just like that, can u open ur legs

22.     From Det. Gilden's review of the above messages, he found that LE disclosed that she was 11 years old almost immediately in the chat, before any photos or videos were solicited, sent, or received. Throughout this chat, Singoku2025 solicited nude images and videos from LE and also engaged in sexual conversations with LE. The requested acts that were mentioned above on 09/07/2025 appear to directly match the videos and images that LE shared with Singoku2025 during the same timeframe. These videos and chats provide evidence that the Singoku2025 account not only received child pornography from LE but also provided direction on what type of child pornography he wanted. Therefore, the Singoku2025 account assisted in the production of said child pornography.

23.     Det. Gilden continued to review the interactions between Singoku2025 and LE on Snapchat. He found that they communicated between the dates of 09/03/2025 and 09/09/2025, according to the records provided.

24.     Det. Gilden observed that LE and Singoku2025 were playing a "number game" early in their conversations. This game was associated to a picture which had the numbers 1

10

through 46 on it. Each number had an associated question or act that the player would have to answer and / or do. These acts ranged from answering basic questions such as what the person's age was to "Send me a pic of my choice, you cannot say NO".



a)

25.     Det. Gilden located messages between LE and Singoku2025 on 09/03/2025 where Singoku2025 specifically requested images of LE's vagina and LE sent the requested image to him. The following is a summary of the messages.:

a)  Date: 09/03/2025 between 03:38:04 UTC and 03:44:31

- Singoku2025: 30

- Singoku2025: Ooooooo

- Singoku2025: ?

- LE: Umm idk

- Singoku2025: Could I see, I could tell u which one it is

- LE: Idk isn't I don't know what that means

11

- Singoku2025: Down there

- LE: My v

- LE: So is that a yes or no

- Singoku2025: Yes

- LE: Sends photo of her vagina

  i. snap~media_v4~2025-09-03-03-44-18UTC~loreleiericso25~singoku2025~saved~b~EiASFTc3VWVERlRYR0RybWkyeERQcWtsMDIBfEgCUARgAQ~v4

  ii. This image was sent to Singoku2025 on 09/03/2025 at 03:44:18 UTC

- Singoku2025: May I save in chat or no

b) Date: 09/03/2025 between 04:42:36 UTC and 04:44:45

- Singoku2025: Can I also see ur v

- LE: You already did

- Singoku2025: I would like more, if that's ok

- Singoku2025: I like seeing all of u

- LE: I would but my side hurts

- Singoku2025: Could u stand up and show me?

26.     Det. Gilden also located a chat sent by Singoku2025 on 09/03/2025 at 05:03:22 UTC. This message read "I wish I could watch u play with yourself." This message shows Singoku2025 expressing his desire to watch LE masturbate.

27.     Det. Gilden further located that the Singoku2025 account had sent both images and videos to LE via Snapchat as well. Two examples are as follows:

12

a) **File-Name:** snap~media_v4~2025-09-04-13-48-27UTC~singoku2025~loreleiericso25~saved~b~EiASFXZDNGt3eUlWd0xTSUtFNnRrWGpKYjIBUkgCUARgAQ~v4

- Description: This is a selfie-style photo of a male subject with his tongue out. The photo also has a "filter" utilized to give the male subject pink devil horns.

- This image was sent by Singoku2025 on 09/04/2025 at 13:48:27 UTC

b) **File-Name:** snap~media_v4~2025-09-07-02-03-38UTC~singoku2025~loreleiericso25~saved~b~EiASFVFWZHBXYlM4OXV0d1htVHFDd2J6cDIBUkgCUARgAQ~v4

- Description: This video is 9 seconds in length and shows a male subject masturbating with his penis fully exposed and erect.

- This video was sent by Singoku2025 on 09/07/2025 at 02:03:38 UTC

28.     Det. Gilden later spoke with TS at the St. Francis Police Department and showed her a still shot image of the two juvenile boys that were depicted in the videos referenced in paragraph 20. TS was able to identify the two juvenile boys as CC (X/X/2016) and LC (X/X/2019). TS further described that both CC and LC were LE's cousins (TS's nephews).

29.     On 09/29/2025, Det. Gilden obtained a state search warrant, signed by Milwaukee County Circuit Court Judge Ana Berrios, for information held by Snapchat. This warrant was in regard to the 14 Snapchat accounts that LE transmitted nude imagery to, including the Singoku2025 account.

30.     On 10/02/2025, Det. Gilden received the requested information from Snapchat. Det.

13

Gilden reviewed the subscriber information provided by the Singoku2025 account. The subscriber information provided an email address of sgoku7325@gmail.com

31.     During Det. Gilden's review of the data provided for the Singoku2025 Snapchat account, he observed that this Snapchat account was communicating with dozens of other Snapchat accounts which appeared to be owned and operated by different juvenile females. From my review of some of the chats between Singoku2025 and these other accounts, they would exchange their ages. Many of the juvenile females I observed Singoku2025 converse with were between the ages 10 and 15. In many of these chats, Singoku2025 would claim to be either 15 or 16 years old.

32.     Det. Gilden further observed that the Singoku2025 had sent selfie-style photos to most of these other accounts. These selfies were of the same male subject as depicted in the image sent to LE, referenced in paragraph 27.

33.     On 10/07/2025, Det. Gilden obtained a state search warrant, signed by Milwaukee County Circuit Court Judge Laura Crivello, for information from Google Inc. regarding multiple Google Gmail accounts including the sgoku7325@gmail.com account.

34.     On 10/13/2025, Det. Gilden received the requested information from Google Inc. The information provided by Google, specifically for the account of sgoku7325@gmail.com, included device identifiers for the electronic device used to access this account. Google was able to provide the following details:

   a)  Subscriber Information:

   - Name: Son GOKU

   - DOB: 10//2004

   b)  Device Identifiers:

   - IMEI: 353670771511543

   - Serial #: a16x:R5CXC17SGMX

14

- Make/Model: Samsung SM-A166U

35.  That Google further provided cellular network information for the above-described device. Google provided a MCC+MNC identifier of **310260**. It should be noted that MCC stands for Mobile Country Codes and MNC stands for Mobile Network Codes. I utilized the website of mcc-mnc.com to identify the carrier for this device. The website showed that T-Mobile was the cellular carrier for this device, based upon the information provided by Google. That your affiant, based upon training and experience, has found this website (mcc-mnc.com) to be true and accurate.

36.  That Google also provided a list of six additional Google accounts which were associated to the cellular device identified in paragraph 30(b). That list of accounts included the Google account of **chanceaxis@gmail.com**.

37.  On 10/14/2025, Det. Gilden obtained a state search warrant, signed by Milwaukee County Circuit Court Judge Rebecca Kiefer, for records from T-Mobile in regards to the device information provided in paragraph 34.

38.  On 10/24/2025, Det. Gilden received the requested information from T-Mobile pursuant to his search warrant. T-Mobile was able to provide the following information:

 a)  Subscriber Records:

- Name: **Axis WILLIAMS**

- Address: **5720 FM 1069 N, Aransas Pass, TX 78336**

- Phone Number: **361-557-5116**

 b)  Text Message Data:

- Det. Gilden located multiple text messages received by this phone number from Rally Credit Union pertaining to a customer account. One of the messages was as follows: "*FreeMSG-Rally Credit Union 1-833-735-1892: Reply YES or NO if you used debit card ending*

15

*9580, Chime, $200.00. STOP to opt out"*

39.     Based upon Det. Gilden's training and experience, he believes that the phone number of 361-557-5116 was linked to a Rally Credit Union account specifically for fraud prevention and transaction verification. Det. Gilden believed that that learning the identity of the Rally Credit Union account holder could help confirm the identity of the user of the **361-557-5116** phone number.

40.     Det. Gilden conducted an open-source search (Google) of Rally Credit Union and found this financial institution to service Texas, and a branch location was specifically identified in Aransas Pass, TX.

41.     On 11/10/2025, Det. Gilden obtained a state-issued subpoena, signed by Milwaukee County Circuit Court Commissioner Susan Roth, for Rally Credit Union records and account information associated to the phone number of **361-557-5116**.

42.     On 11/13/2025, Det. Gilden received the requested records from Rally Credit Union pursuant to his subpoena. Rally Credit Union was able to provide the following documentation and records:

    a)  Member Agreement – Dated 07/09/2025

- Name: Axis Chance Williams
- Address: 5720 FM 1069 Seahorse RV Park Lot 38, Aransas Pass, TX 78336
- Driver's License Number: Texas 47613691
- Employer: Brownwater Marine
- Email: chanceaxis@gmail.com
- Phone Number: **361-557-5116**
- DOB: 10/25/2004

16

- SSN: 771-34-66XX

b) Video Surveillance from Rally Credit Union Bank Transactions

- Det. Gilden was able to review the footage provided by Rally Credit Union and he was able to identify AXIS WILLIAMS as the person completing the banking transactions at the Aransas Pass Rally Credit Union location (2442 W Wheeler Ave, Aransas Pass, TX 78336) on the following dates/times:

    i. 08/22/2025 at 13:43

    ii. 09/22/2025 at 17:49

    iii. 10/04/2025 at 21:19

- Det. Gilden was able to identify AXIS WILLIAMS in these videos by comparing AXIS WILLIAMS' Texas Driver's License photo to the subject completing the above financial transactions. I found AXIS WILLIAMS' Texas Driver's License photo to be consistent with the person I observed in the selfie photo with devil horns which was sent to LE, as referenced in paragraph 27.

43. That Det. Gilden noted that the email address of chanceaxis@gmail.com was identified as a Google account that was accessed by the same cellular device as sgoku7325@gmail.com.

44. That Det. Gilden conducted preliminary location data mapping specifically in regards to historical location data obtained from the Singoku2025 Snapchat account and the cell tower data obtained from T-Mobile for the **361-557-5116** cell number. Det. Gilden utilized Cell Hawk to complete his data mapping. The records used for mapping from T-Mobile covered a date range of 02/09/2025 through 10/13/2025. The records used for mapping the Singoku2025 Snapchat

17

data spanned a date range of 08/11/2025 through 09/09/2025. From his analysis of the records, he made the following observations:

a) Det. Gilden observed over 1,200 Snapchat geo-locations which plot to the general area of 5720 FM 1069 N, Aransas Pass, TX. This has been identified as the Seahorse RV Park. This is the same location that T-Mobile and Rally Credit Union records show AXIS WILLIAMS residing at.

b) Det. Gilden observed numerous Snapchat geo location pings which plot to the general area around 843 Bishop Rd, Aransas Pass, Texas, which was identified as the location for the business of Brown Water Marine Services. This business was listed as the employer of AXIS WILLIAMS in the records obtained from Rally Credit Union.

45.     That Det. Gilden further compared the T-Mobile records (361-557-5116) and Snapchat records (Singoku2025) for the date range of 09/03/2025 through 09/09/2025. This date range was identified time frame in which LE communicated with the Singoku2025 Snapchat account. Det. Gilden made the following observations during his review of this specific time frame:

a) Det. Gilden found that the cell tower data for this time frame appeared to mirror the same locations as provided by Snapchat for the Singoku2025 account. This provides evidence to support that the cell phone serviced by T-Mobile (**361-557-5116**) is the same device that is being used to access the Singoku2025 Snapchat account.

b) Det. Gilden found that some of the Snapchat geo-location records and cell tower data appear to follow a waterway along the coastline of Texas from the southern border (Texas / Mexico) all the way to Houston, Texas.

• Det. Gilden conducted a search of Brown Water Marine Services, as

18

mentioned above, and found this company to provide *"marine transportation services through out the Gulf Coast of Texas and Louisiana."* I located this information on the company website, brownwatermarine.com. The numerous geo locations plotting to this business, along with the suspect Snapchat account having location pings along Texas coastal waterways may show that this suspect works for Brown Water Marine Services, as identified in the Rally Credit Union records.

46.     That Det. Gilden conducted an idiCore Database search (open-source database) of Axis WILLIAMS and found the following information:

    a)  Address: 5720 FM 1069 N, Aransas Pass, TX 78336

    **b)  Phone: 361-557-5116**

    c)  DOB: 10/25/2004

    d)  SSN: 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

    e)  Vehicle: 2007 Nissan Armada (TX/SND6128) (VIN: 5N1AA08A67N711791)

47.     Det. Gilden conducted an NCIC inquiry of the Texas license plate of SND6128. He found the plate to list to a 2007 Nissan with an associated VIN of 5N1AA08A67N711791. This vehicle further listed to AXIS WILLIAMS.

48.     Det. Gilden compared the selfie image sent by Singoku2025 to LE via Snapchat to the Texas Driver' License photo of AXIS WILLIAMS. Det. Gilden was able to identify AXIS WILLIAMS as the individual depicted in the Snapchat selfie.

49.     That on Monday, 11/17/2025, San Patricio County Sheriff's Office Investigator Juan Longoria assisted with surveillance on this case. Inv. Longoria obtained photos of the RV

trailer located at 5720 FM 1069 Lot XX, Aransas Pass, TX. Parked next to this trailer was the 2007 Nissan Armada with Texas plates of SND6128.

50.     Based upon this investigation, it was determined that the Singoku2025 Snapchat account received and assisted in the production of child pornography. Three identified juveniles were depicted in the images and videos; LE – 11 years old, CC – 9 years old, and LC – 5 years old. This investigation has further shown that AXIS WILLIAMS is the user of the Singoku2025 Snapchat account. AXIS WILLIAMS is further believed to be utilizing a specific cellular device to access this Snapchat account, as referenced in paragraph 36. This cellular device is believed to be used by AXIS WILLIAMS and is therefore further believed to be in AXIS WILLIAMS' personal possession. This investigation has further shown that AXIS WILLIAMS has a 2007 Nissan Armada which is registered to him. This vehicle has been seen parked outside of the RV trailer located at 5720 FM 1069 Lot XX, Aransas Pass, TX. Records from T-Mobile, Rally Credit Union, and open-source searches show AXIS WILLIAMS to reside at **5720 FM 1069, Aransas Pass, TX**. Records from Rally Credit Union show him to specifically reside at **Lot 38**.

51.     During this investigation, there has been multiple attempts to confirm that AXIS WILLIAMS resides at 5720 FM 1069, Lot 38, including in-person surveillance efforts. Investigators have been unable to witness WILLIAMS at the RV located in Lot 38. It was also determined that AXIS WILLIAMS has additional family members living in this same RV park. These factors have made it extremely difficult to confirm AXIS WILLIAMS' exact residence at this RV park.

52.     That this investigation has identified that the phone number of **361-557-5116** belongs to AXIS WILLIAMS and is further serviced by T-Mobile. This number is to be identified as the "**Target Cell Phone**".

53.     Your affiant knows that historical and real-time cell site information maintained by

20

the provider will demonstrate Axis Williams' movements and patterns of living, including locations where he regularly spends time such as a place of employment. This information will also assist law enforcement in locating Williams to execute a search warrant in a safe manner.

54.     A signed warrant had been previously obtained for this target number (361-557-5116) on January 21, 2026. Due to a typo of the target number in Attachment a of that warrant, a new warrant is being applied for.

## TECHNICAL BACKGROUND

55.     In my training and experience, I have learned that T-Mobile (hereinafter, "the **Service Provider**") provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data, cell-site data, also known as "tower/face information" or "cell tower/sector records," and timing advance or engineering data commonly referred to as per call measurement data (RTT, True Call, LDBoR, or equivalent). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

21

**Cell-Site Data**

56.      Based on my training and experience, I know that the **Service Provider** can collect cell-site data on a prospective basis about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the **Service Provider** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**E-911 Phase II / GPS Location Data**

57.      I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the **Service Provider** can collect E-911 Phase II data about the location of the **Target**

**Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on the **Service Provider's** network or with such other reference points as may be reasonably available.

**Pen-Trap Data**

58.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

**Subscriber and Messaging Information**

59.     Based on my training and experience, I know that wireless providers such as the **Service Provider** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the **Service Provider** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone's** user

23

or users and may assist in the identification of co-conspirators and/or victims. I further request extended subscriber information, handset identifiers, handset make and model, Wi-Fi MAC address, and account notes and memos for the target device.

**AUTHORIZATION REQUEST**

60.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

61.     Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), this application and the accompanying warrant are intended to comply with requirements set forth in 18 U.S.C. §§ 3122-3123.

62.     I further request the following information from the service provider: the installation and use of a pen register trap and trace device, all real-time precision location information, including E-911 Phase II data, GPS data, and latitude-longitude data, real time cell site information, and per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) beginning 30 days from the date the warrant is issued.

63.     I further request call detail records and data reports (voice, SMS, MMS), including cell site location information, originating and destination IP addresses, per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) for the past 30 days.

64.     I further request that the Court direct the **Service Provider** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

65.     I also request that the Court direct the **Service Provider** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the

24

**Service Provider's** services, including by initiating a signal to determine the location of the Target Cell Phone on the **Service Provider's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the **Service Provider** for reasonable expenses incurred in furnishing such facilities or assistance.

66.     I further request that the pen register / trap and trace device be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

67.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

68.     Because the warrant will be served on the **Service Provider**, who will then compile

25

the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

## ATTACHMENT A

**Property to Be Searched**

1.     Records and information associated with the cellular device assigned **361-557-5116** (referred to herein and in Attachment B as "the **Target Cell Phone"**), with listed subscriber(s) of AXIS WILLIAMS that is in the custody or control of T-Mobile, a wireless telephone service provider (referred to herein and in Attachment B as the "**Service Provider**"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2.     **Target Cell Phone**.

## ATTACHMENT B

## Particular Things to be Seized

### I.     Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the **Service Provider**, including any information that has been deleted but is still available to the **Service Provider** or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the **Service Provider** is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the period of August 1, 2025, to the Present date:

    i. Names (including subscriber names, usernames, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long-distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions.

    v. Length of service (including start date) and types of service utilized.

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or

28

bank account number) and billing records.

    ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

        (A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        (B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT").

  b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

    i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii. Source and destination telephone numbers;

    iii. Date, time, and duration of communication; and

    iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

  c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the **Service Provider**, the **Service Provider** is required to disclose the Location Information to the government. In addition, the **Service Provider** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a

29

minimum of interference with the **Service Provider**'s services, including by initiating a signal to determine the location of the Target Cell Phone on the **Service Provider**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the **Service Provider** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Title 18, United States Code, Sections 2252A and 2251(a) during the period August 1, 2025, to present date.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.